May it please the court. I'm Rick Olman. With me is Rachel Osterdorp. We're from the firm of Carleton Field, Jordan Burt. With us is Mr. Dan Souza. I will be presenting the argument today. Of course, I'm here to answer whatever questions the panel may have. I'd like to focus my argument on two points. First, guided by the six factors identified in the Lozman decision, the absence of probable cause should not be an essential element of a claim of First Amendment retaliation in cases like this one involving an allegedly retaliatory civil RICO case brought by a local government. Second, I'd like to, irrespective of that point, address the point that there is no probable cause for the RICO suit that was brought here. Turning to the first point, the standard First Amendment retaliation case is governed by the standard set forth in the Mount Healthy case. First, there has to be protected activity involved. And here there was petitioning activity. It's protected activity. Second, there has to be an adverse effect on that activity. Here the RICO suit essentially stopped the petitioning activity. Why wouldn't Hartman be a more apt precedent than Mount Healthy? Well, Hartman is part of the analysis that I'm going to be making under Lozman. But Lozman identifies six factors that are much more... To me, Mount Healthy is way off base. It's an employment case. This seems to me Hartman is where there was actually a prosecution. And if you could speak to Hartman, I'd like to hear your distinctions on why you don't think that's a problem for your position. Yes. Hartman is a case in which the court held that where there's an attenuated causation, this is the same as the first factor in Lozman, then probable cause is needed to bridge the gap between the actor who has the retaliatory animus and the actor who is engaged in the conduct that has the adverse effect. So in cases like Hartman, as Lozman also observes, the prosecutor has immunity. And he also has a presumption of well-regulated activity. So what you have to prove in such a case is that some other actor induced the prosecutor to bring the retaliatory case. And what Hartman says and what Lozman says is that if there was an absence of probable cause for the prosecutor to bring the prosecution, that's highly probative of the notion that some other actor caused the prosecution to occur. However, Lozman's second factor is that where there's a municipal policy of retaliation, that's an especially serious situation. And it's different than a prosecutorial discretion decision or an arrest decision. Do you not see a difference, though, between a municipality deciding that it's going to take action against someone who has engaged in First Amendment speech by getting them arrested or prosecuting them from a municipality that is what it deems protecting itself in litigation against what it deems to be the bad faith litigation of the plaintiffs in this case? You don't see a distinction in that? Well, I think there's, first of all, under Florida law, the government cannot bring a malicious prosecution at all. Here, there's an additional problem. Florida law guarantees under Article I, Section 23 of the Florida Constitution, a constitutional right for public record. For purposes of discussion, you do not see a difference between a municipality getting somebody arrested and a municipality, a city, it's easier to say than I'll say municipality, a city that's continually being sued by someone and what they think is a bad faith basis from trying to protect themselves reciprocally. The same sort of thing with its own litigation to counter that. You don't see a distinction in that? And also, in Rainey, said that malicious suits are not a predicate under RICO. And in Gulfstream, this court, Judge Rosenbaum was on the panel, this court held it doesn't matter whether it's a one-off case or a numerous cases that are being brought. Whether there's probable cause, but not whether qualitatively. Let me ask you this question. Sure. Our precedent now indicates that the threat of litigation can't constitute a predicate act for purposes of RICO. So if the city here again did this, I think we would all agree would probably be frivolous. That's been, the death knell's been set on that one. But what if our precedent were different? What if our precedent said, you know, we would consider as a predicate RICO act extortionate, bad faith sorts of threats of litigation. And that's our precedent. And let's say the city here, given that precedent, had not only gotten past summary judgment, they had gone to a trial and a jury ruled for them on the RICO case. Would you still argue that the fact that even though the city had a winning position, that it was retaliatory action and that the plaintiff's claim here would stand? The way retaliatory First Amendment cases... Yes or no. That's a yes or no question. What would your position be? Yes, I would still argue it. So even though they had a good suit, even though they were right, even though the jury said, yes, you're entitled to damages, they still, it would be considered retaliation. The question would be, was the suit brought in order to retaliate, or was it brought because they had some legitimate concern other than retaliation? They thought it was a bad action, and a jury and a court said they were right. Well, of course, none of that happened here. In fact, the town of Gulfstream's case was dismissed. On a motion to dismiss... If that happened, you'd still say that would be a First Amendment retaliation. What I'm saying is the issue would be, did they bring the suit because they wanted to retaliate, or did they bring the suit because they had legitimate concerns that they were following unrelated to the retaliation? In Lozman, which is one of the reasons I come back to Lozman, in Lozman, the great lesson of Lozman... On this fact situation, do you distinguish between something that would be retaliation and something that would be a legitimate desire to bring a lawsuit? What would be the difference? Well, for example, I wouldn't think it's a legitimate basis to bring a lawsuit where it was barred as a matter of law by prior precedent. That would be one reason. I wouldn't do it where I thought or where I knew that this kind of a case is analogous to a malicious prosecution case by the government. Florida doesn't allow that. And I also would recognize that where Article I, Section 23 of the Florida Constitution guarantees the right to make public record suits and public records demands, that I don't think you should be able to go to federal court to get an order from a court either punishing or stopping the filing of state court suits on a fundamental right to petition. If you were on legally solid ground, in my hypothetical, you were going to win. You were going to win on that lawsuit. You're not saying that the city lacks the right to petition or lacks the right to go to court the same way any citizen does. What I'm saying is that that suit was barred by precedent. If you want to argue, if your question to me is, if it weren't barred, if there weren't a fundamental right to petition that was implicated or being violated, and if there wasn't a right under the Florida Constitution, could they bring the suit? My answer is, if they can bring the suit, if that's why reasons unrelated to retaliation is why. In Lozman, there was probable cause for the arrest. But you still had a retaliation claim. On a different sort of line of thought, let's say that we have a situation where the person makes public records requests, and the records they request are things like all records the city has that have the letter A in them at least 100 times, all records the city has that have the letter B in them at least 100 times, et cetera, like that, that it's clear that there's no sort of core First Amendment desire that is involved in seeking these kinds of records. And the sole reason for doing it is to try to sort of trap the city and get attorney's fees. I'm not saying that's the case here. I'm just saying assume that is the case. It seems like in that case, under Lozman, since one of the considerations we have to take into account is whether the speech that we're talking about, well, first of all, whether it's in fact really considered speech, but second of all, whether it is considered the core First Amendment value. In a situation that we have in this sort of hypothetical, where I don't think you could really argue that it is what we would normally think of as First Amendment type of protected speech, would the city then be able to, you know, would there be a cause of action under 1983 if the city acted the same way that it did here? No, I don't think so. And why not? And the reason is because as the case law of this circuit says, those kinds of things can be handled in the state court. I mean, I've litigated public records cases for years, and you have to have, you know, the court has to decide. But you just said that you're, let's say that the client in that case, let's say the same thing that happened to your client happens in that case. Would the client in that case then be able to be successful under a 1983 suit, retaliatory First Amendment suit? No, I don't think so. I think what your remedy would be in the state court, saying it was an unreasonable request, you'd get 57-105 sanctions. The state court doesn't mean that you've retaliated when a litigant chooses to go to a different court just because he could have gone to a different venue, does it? I'm sorry? Just because the litigant in this hypothetical, the city, could have gone to state court, you said, does that necessarily mean that the litigant chose a different venue to vindicate its rights in a different way That was a key part of the holding in Prendergrast, is that you don't want to take the remedies away from the state court and create a federal cause of action. It's that retaliation if you do so. That happens all the time with all sorts of things that could be litigated in state court, but people come to federal court. It's not retaliation when they make that choice, is it? Well, we're sort of confusing two different issues. What these cases are saying is those aren't predicate acts. So you can't sue for RICO. You're back to probable cause, which you say was not here. Well, what I'm saying is that probable cause under Lozman-Hartman would not be applicable here. The standard is whether or not they would file a suit for legitimate reasons unrelated to retaliating. So I'm sorry if I could just bring you back for a moment. I'm not sure we're on the same page, and maybe I haven't been clear in explaining the hypothetical. Let's say your client, Tom, goes ahead and serves all of these hypothetical public records requests that, as I've explained previously, clearly are not legitimate. The city, in order to stop this, files the RICO case, but files it before the precedent from this case says you can't do that. Your client, Tom, can Tom now sue the city successfully under 1983 for retaliation in violation of Tom's First Amendment rights for having filed these requests and for having filed lawsuits seeking money or attorney's fees for failing to comply with the requests? And whatever your answer is, why? My answer would be no, because you have a remedy in each of these cases. Who has the remedy? The city. Sometimes I defend cities. Sometimes I sue cities. You always can argue that the request was unreasonable, overbroad, too vague, whatever. But how does that affect Tom's ability to succeed on a 1983 claim for retaliatory violation of his First Amendment rights? Because the only issue would be did they file that suit to retaliate for his petitioning activity or did they file it for a legitimate reason unrelated? That would be the issue. What this adoption of probable cause does is cut off... I'm sorry. It's probably me. I apologize. I'm not really understanding. Are you saying, then, that your client would have... that Tom would have a viable cause of action under this scenario against the city for filing the 1983 claim? No, I'm saying that his remedy would be in the state court action. He would object to the request as overbroad, vague, or improper, and he would have a 57-105. Great. And is that because those particular requests were not really considered speech? Those requests were sort of considered conduct as opposed to speech. They would be considered not proper 119 requests. And one of the points of this court's cases is that you don't want to convert state law, malicious prosecution cases, into federal cases. But if the sole reason for filing the RICO suit is to stop the filing of these nonsensical requests, Public Records Act requests, right, then there must be something different about the character of those requests than the character of your client's requests that makes the city's exact same action in both cases a violation of First Amendment rights in one and not a violation of First Amendment rights in the other. And that's what I'm not understanding. What is it about the character of those requests that makes it a violation of First Amendment rights in one situation and not a violation in the other? Well, I guess it's hard for me to speculate when it's so much contrary to what the record is, but what I understand 1983 for is when you've been deprived of a federal right and you have a right to petition and you have a right to file public records cases. So one of the reasons you limit 1983 is because you don't want it intruding or creating federal causes of action that should be handled in the state courts. If a public records request is improper, the state court can handle it. You're limited to reasonable fees. You have to submit your time billings. You have to have a proper request. There is no basis... How does the state court action start? Does the city have to go in and say, I don't want to respond? Does the city have to initiate it and say, I have all these 100 requests and I think they're overbroad, they're brought maliciously, I don't want to respond to them. Is that what the city should do? I'm trying to say, is that what the city should do? For example, if I were defending the city... No, I'm asking, is that what you're saying the city should do? Go to state court? I'm about to answer. The way it works is you make a demand. The party seeking the document makes a demand. The city produces the document. If it doesn't produce the document... The city says the document, this is like the hypothetical, it's for A or B or whatever, it's clearly not a good legal demand, but it is a demand. So what does the city do? They just write a letter back? They deny it. Okay, and then what happens? I'll explain why. Then it's up to the person requesting to file a lawsuit. If he files a meritless lawsuit, he'll get tagged with 57-105. Okay, and so the city just writes back, I deny it, and then you have to go as the requestor and move in state court, and you file 29 lawsuits on these that they refuse to answer. Is that what the record... I mean, there's some reference to that in the order. There is, so far as I can tell in this record, there is not record evidence that these lawsuits were considered frivolous. Any court ruled them to be frivolous. I don't know whether they are or not. I'm just asking you whether then the city denied the request and then there were 29 lawsuits. Forget about whether they're good lawsuits or bad lawsuits or whatever. Yes. Okay, there were 29 lawsuits. Over what period of time? I don't know. Over a couple years, I suppose. Okay, and then how many demands were there in that same period of time of which gave rise to 29 lawsuits? Well, normally... No, sir, I just want to know this case. How many demands were made? Well, I think there were 100 public records requests, but there may have been more. There may have been more requests. And there were lots of subparts of each request. For example, in Wantman, there was one public records request for one document. One request, one document. It was a certificate of insurance. There was a contract between Wantman and the South Florida Management District. The request asked for that. It said it was a public records request. It said where the document should be sent. It was sent to the executive at Wantman who executed the contract with the government. All right, tell me what happened in the 29 lawsuits. Did your client recover attorney's fees in those lawsuits in the state court? What happened in the state court lawsuit? My understanding is the town has not paid a nickel on any of those lawsuits ever. But did the state court say there was a good demand and award attorney's fees? I don't think the record addresses that. There isn't evidence that these were frivolous or meritless cases. Let's say we can take judicial notice of the state court pleadings. Just assume that. So tell me what happened in the state court. Was your client awarded attorney's fees against the city? I don't believe there was any payment of attorney's fees by the town. So that's not what I asked. Was there any award by the state court of attorney's fees? Not that I'm aware of. Okay. But as I say, I don't think there was any ruling that they were frivolous either or meritless. That's one of the questions on remand, frankly. Thank you, counsel. You have reserved three minutes for rebuttal. Thank you. Good morning. May it please the court. Hudson Gill from Johnson & Salmo on behalf of the town of Gulfstream. And I'll address some of the things that came up in detail in a second. But really, the issue for this court is whether, the first issue is whether the district court correctly found that probable cause or the absence of it was a necessary element to a first amendment retaliation claim based on the filing of a civil lawsuit. And we think that is correct. The second one is whether there was, in fact, absence of probable cause. And we think the evidence shows that the town established probable cause. One of the, to correct some of the issues with the record, I think the record evidence shows that at the time in October of 2014, when there was a meeting where the town voted to retain Richmond Greer to file the lawsuit, there had been approximately 1,500 public records lawsuits submitted by Lawsuits or requests? I'm sorry. Requests. Requests submitted by I'm not talking about requests with subparts. Take it as one request. Even if it has subparts for different documents, tell me how many requests there were. 1,500. Even separate requests? Yes, Your Honor. If you look at the record, we have Not 100 with 20 subparts for each one. No, Your Honor. My understanding of what the record shows, and I'll point you where it is in the record, there were approximately 1,500 submitted. It's about a 13-month period against the town done by 13 months from when to when? The meeting was in October, and I believe they started in this latter part of 2013, the year before, so August is when I believe they started really recording them. And if you look at our motion for summary judgment in the appendix, appendix 2 and 3 Summary judgment in this case? Yes, Your Honor. So it's Document 138-2 and 3. We actually filed what are public records logs that the town kept, which identify the date the request was received, what the request was for, what it asked for, who the request was, and those are at those two exhibits. And then there were, at that time, 29 lawsuits had been filed based on those requests, and there were a variety of outcomes. As far as my understanding, some of them are still pending. Your Honor, the town just received summary judgment in one of them. I guess I want to know, has any attorney's fees been awarded by court? Forget whether it's paid. Have attorney's fees been awarded? My understanding, and this would have to take judicial notice of the record, it's being litigated today whether how much the town will have to pay for attorney's fees in one of the claims at least, one of the lawsuits. It has not been, there's been no award, but it's in litigation. Let me ask you something. I'll tell you what I'm worried about. You know, I would like to find a distinguishing feature between, you know, legitimate, the legitimate exercise of First Amendment rights and what looks on the surface like First Amendment rights being exercised, but when you look a little bit more closely, you can tell that's actually not what's happening. It's not an exercise of First Amendment rights, like a situation of the filing 100 different requests, all of the, you know, the first one says all communications from the city that have the letter A in them more than 100 times, second one B, et cetera, like that. And those, and here's what my concern is, and I haven't been able to figure out how to draw that line, because what if you have a situation where you have, let's take the opposite hypothetical, right? You've got a news organization, an investigative reporter or something, legitimate investigative reporter who is investigating corruption of the city council and all of its officials and, you know, is seeking all of the records related to that and does it through a number of requests over an extended period of time because it takes a while to get the story or whatever. And the city does not like this, right? So the city files a RICO suit, like the city here did, and says, you know, this is totally legitimate, they're just trying to get attorney's fees, et cetera. It's basically the same scenario as here, except that the requests that are made are made so that the investigative reporter can determine whether there's evidence to support his theory that corruption actually occurred. I mean, it seems to me that if you then, if the city's sole purpose was to stop that from going on, right, because it just didn't want to give those records since giving those records would possibly embarrass them or lead to criminal charges against them, then that would certainly be, to me, that would seem to fall within the Lozeman calculus. But on the other hand, if you have the situation where, you know, the person is just seeking all of the stuff with A's or B's or whatever and there's no legitimate purpose, that's not really the exercise of a First Amendment right. It looks like it on the surface, but when you really look at it, it's not. How do you explain how that line is drawn? I'd first like to say that the town does not concede that the Public Records Act under Florida law is a First Amendment issue. I mean, the right to obtain public records from governmental entity is a state-created right. It's in the state constitution, not the federal constitution. Yeah, but I mean, the right to petition the government. But I would, you know, certainly filing lawsuits about that would be protected activity. I think the test that the town asked to be employed just looks at probable cause. And so in that scenario, the court would then look, well, when the town filed this, was there a probable cause to believe or reasonable belief that they would be successful in the end based on what the status of the law was? If there is that, then there's no First Amendment claim that can go forward. If there's not, in that scenario, which if what you're in your hypothetical assuming that wouldn't be probable cause at the time, that media agency would be able to recover from the town for a First Amendment violation. The test we're asking to be employed doesn't say someone like Ms. DiMartini can't recover. She just has to show there was an absence of probable cause, meaning that basically the lawsuit was frivolous when filed by the municipality. The problem with the test that she employs is that it's really unworkable. There's plenty of situations where municipalities either file lawsuits or take legal action over the filing of a lawsuit. A 57-105 motion does just that. A municipality is taking action against someone for filing a lawsuit. It's frivolous. Under Ms. DiMartini's proposed test, that's a per se First Amendment violation. Because the test that they propose is, is there protected activity? Yes, the filing of the lawsuit. Is there some adverse action? The 57-105 motion. And then under the Mount Healthy, which is really part of the Bozeman test also, the question is just whether the municipality would have taken that action absent the protected activity. Well, in a 57-105 motion based on a lawsuit, the answer is no, they wouldn't have taken that action. So under their test, that's a per se First Amendment violation, which I just don't think how the First Amendment is designed to work, Your Honor. And there's other examples that come up. Vexatious litigant statutes. The state of Florida says we can seek a remedy for someone who's filed a number of frivolous lawsuits. Under their test, that's a First Amendment violation. So really what the town asks, Your Honor, is that just employ the closest Supreme Court test, which is the Hartman test to this, because it is the most logical way to do this. It's what the other circuits have done that have addressed this. And that's a test this court should employ. It's a matter of first impression for this court, I believe, and that's the place to look. And then, Your Honor, I believe I've reserved, we split the time with the other counsels, so I'll just close with saying the rest of my briefs in terms of the probable cause that existed for filing the lawsuit at the time. Thank you, counsel. Good morning. May it please the court. My name is Jim McGuire. I'm here today on behalf of the appellee, the Wantman Group. Your Honors, we think that with respect to the issues relating to the Wantman Group, the only question for the court today is to affirm summary judgment on the malicious prosecution claim. We're not really dragged into the Lozman debate, I don't believe. And with respect to that question, we cited in our brief, quoted the district court who said that this battle is just one battle in a longer war between these parties. And the district court's grant of summary judgment, we believe, has essentially brought that war to an end. We're asking today that you affirmatively bring this war to an end as a final decision. Thinking about the claims and the arguments that are being made about the Wantman Group, we would ask you primarily to think about two things today in terms of sort of framing the malicious prosecution claim. The first is that, as this court has noted, and again it was in the town of Gulfstream case that Judge Rosenbaum, I know you were on the panel, malicious prosecution claims are heavily disfavored. In fact, the court went on to say that litigants may be sanctioned for their conduct only in the most frivolous of claims, only the most frivolous of claims. In this case, the RICO claim that was brought here is not even close to that level. And so on one side we have the fact that these types of claims are heavily disfavored. And I think the other factor to keep in mind, again from this court and the Mee Industries decision, noting that the standard for establishing probable cause is extremely low and easily satisfied. So I think given that these claims are disfavored, given really how straightforward it is to establish probable cause, we don't believe there's any realistic basis for reversing the summary judgment. Can you repeat again for me what you cited for that? The standard is low and easily satisfied. What did you say? Yes, Your Honor. It's the Mee, M-E-E Industries case. Eleventh Circuit case. Yes, 608 F-3rd. I've got it. I just didn't hear what the name said. Sometimes I speak quickly, so forgive me if I do. So given these parameters, the question is do we revive this war? And we hope and we think that the answer is no, you don't. And in fact, we think that to some degree the court has already answered that question because you may recall in the RICO case when it previously came up to this court, the court ruled against my clients. It found that the RICO claim did not state a claim because litigation or threats of litigation were insubstantiated in the predicate acts. But also in that case, the defendants filed a motion for attorney's fees under Federal Appellate Rule 38, which is the rule that says you can get appellate fees if the appeal is frivolous. And this court denied that claim. I think having already in the RICO case when you had that full briefing on that case ahead of you, having already said this is not frivolous, we're not awarding attorney's fees, this is really just a second bite at the apple. They couldn't win it that way, so now they're bringing it as a malicious prosecution claim, the type of claim that's heavily disfavored, that will prevail only with respect to the most frivolous litigation. So given sort of that history, we don't think there's any way to get there on this case. And I think it's worth pointing out that the Florida state courts looking at malicious prosecution claims have compared them or analogized them to motions under Section 57-105 for attorney's fees. And in those cases, again, the standard, it's written somewhat differently, but the courts have interpreted it essentially as a frivolousness standard. And in the case of Central Florida Machinery, which is I believe a second DCA case that is cited in our briefs, the court said this about the frivolous standard under Section 57-105 comparing it to malicious prosecution. It said, it seems incongruous to impose a standard of frivolousness for an award of attorney's fees pursuant to Section 57-105 and a standard invoking a lesser degree of care to support an award of damages for malicious prosecution. So basically that court is saying, if you can't win a 57-105 motion, if you can't win the equivalent, a Rule 11 motion or a Rule 38 motion on appeal, you're not going to win a malicious prosecution claim either. So we think, again, the court having already looked at this issue when the RICO case was up on appeal, it would be equally incongruous to find that this malicious prosecution case should be revived and brought back to life. We think in large measure it's already been dealt with. We haven't had much opportunity this morning to talk about all the sort of facts that were available to support the finding of probable cause below. And I'm certainly glad to do that, although I have limited time left. I think the problem in this case is whether the standard is probable cause. If it's probable cause, it's an easy case. The big question is whether the fourth element here is probable cause or some proxy for probable cause. It's clearly a fourth element. Just is it probable cause? Not in the malicious prosecution in the retaliation case. Clearly in malicious prosecution it is. Granted, Your Honor. And as I said— And you're saying there's no retaliation claim against your client. There is not, and my client is an estate actor. Yeah, right. So I don't think that— I think we got your case. We were fortunate when the order came out to brief Lozeman that we read it, and we said that doesn't seem to be us. So we briefed it anyway, but I really think it's an issue between the other parties. It won't surprise you to know that I agree with the town on their analysis, but I do think they're right on that. So with less than a minute left, I won't try to run through all of the factors relating to proof of probable cause in this case, but they are substantial. The type of public requests that were being made here and the effort, not to put too fine a point on it, but the effort to extort money from the town and from Wantman Group and from the other private entities that work on behalf of the state is beyond egregious. Can I just ask you a factual question? I was looking at this public records statute, and 119.074D says, if the nature or volume of public records requested is such as to require extensive use of IT resources or extensive clerical or supervisory assistance, the agency may charge a special service charge which shall be reasonable and shall be based on the cost incurred, blah, blah, blah, blah, blah. Was that something the city ever considered doing, or your client as the contractor? I can't speak to the city, and I won't attempt to do so. The Wantman Group was in sort of an unusual situation. They got one public request, and facially the request wasn't a bad request. They asked for a copy of the Wantman Group's insurance policy that it had to do work for SWFMUD. The trick in this case, and it's a trick they use all the time, is they send it with a subject line and an email address that made it appear to be spam. And so my client either never saw it or thought, I'm not opening this because it's going to infect my computer system, and didn't respond to it. The first time that they actually learned that this insurance document was being requested from them, they produced it. They weren't trying to withhold the insurance document. They thought they were walking themselves into a virus on their computer. So it's not merely public records requests that are sort of outrageous, all the letters A or all the letters B. It was trying to send them in such a way that you could deceive the recipient. And I will tell you this. I also do a lot of public records requests. We represent a lot of legitimate media organizations. We've represented Joel Chandler in the past. When we request public records, we figure out, who do we need to ask? Let's make it very clear. Let's tell them we'll pay any fees associated, and let's cite them to the Public Records Act so they know they have to do this. And the reason we do that is we want to get the public records. They had zero interest in the public records. They wanted to get the attorney's fees. And the notion that they ought to be rewarded by this court now and this summary judgment decision ought to be undone is quite remarkable. I will tell you that. I'm quite a bit past my time here. If you have more questions, I'm glad to answer. But in any event, we ask that you affirm the decision below. Thank you, counsel. Thank you. I'd like to first address Wantman. There was one request for a public record. It's clearly stated this is a request for a public record. It had on it where you were supposed to send the public record. It was for one document to specify. Do you know what the email line said? Yeah. I mean, it said this is a public record request at the top, and it said send to this. Not the attachment, but the email transmittal. Was it by email to begin with? Yes, it was. Okay. And what did the email line say? What it said was this is a public record request. Okay. In the email line? Well, that was the face of the email. Subject matter line. Subject matter line. Thank you. The subject matter line, the ray line. I honestly don't recall. Okay. Would that be in the record? That would be. It's in the record. The request is in the record. It was sent to the executive who executed the contract for Wantman with the South Florida Water Management District. The contract says in it that the documents relating to its performance are subject to 119, and it gives this man as the person to get notices relating to the contract. So one email, one specified document, clearly labeled. Now, how you get a RICO case out of that, I'm not sure. But then what happened, three weeks went by, because when he got it, he thought it was spam. Well, give him the beta, maybe he did think it was spam. In the meantime, there was no response. So a suit was filed demanding the document. The response was, okay, here's the document. Go away. And they said, well, we have $3,900.16 in attorney's fees. $39,000, half a million, $50,000, $3,900. And they refused to pay it. The case went forward. And the court, appellate court, ultimately ruled that it was not an unreasonable delay to take five weeks to respond, if they initially thought that it was spam. So you didn't get your attorney's fees? The client, right, they did not pay attorney. The appellate court ruled for them. The court ruled under the law in Florida. If there's a delay, it has to be an unreasonable or unjustifiable delay if you produce the document. And so there was no payment of attorney's fees. And the demand was for $3,900. Now, I practiced a long time. It's not uncommon for people to ask in an initial settlement demand for more than the lodestar. You're not, in fact, under the factors of this court. You have 14 factors under Johnson and then the subsequent cases, Purdue or whatever. You're not limited to lodestar. So somehow one demand for a specified document for which no fees were paid became a RICO case. Now, what we are entitled to have is a jury decide, did they bring this RICO case for this entity because their review of the law was that they could get a RICO claim in the teeth of what this court has said? Or did they do it for other reasons? So the hypotheticals that you keep asking about, about hundreds of thousands of documents being requested, that's not what Wattman is about. In town of Gulfstream, there is no evidence that any extortionate payment was ever made. In fact, there was no settlement paid in any of those 29 or 36 cases. There is also no evidence that a single one of these cases was ever held to be frivolous, meritless, or improper in any way. And what this court said in Prendergast, what it said in Gulfstream, is that you have a remedy. If someone files an improper case, you have the ethics, and this court cites an opinion where a lawyer engaged in misconduct, the state ethics provision. You have 57-105. Florida law strictly limits attorney's fees to reasonable fees. You can't extort or hide because you have to put your time charges in and whatever other basis you have for the fees you're asking for. What is being done here? I have a question for you. Your opposing counsel says if I go look at document 138 in the summary judgment, I'll see that you filed, your client filed 1,500 different requests in a 13-month period. Is that accurate? I believe it's accurate. That there were 1,500 separate requests? I believe that's correct. Okay. But I'll also tell you a second point. You just wanted to know whether it was accurate or not. I believe it's accurate. Okay. But I will also make a second point, which is under the Florida public records law, documents are to be kept as if they're on the table. That's the Canela case. Okay. I think we have your case. Okay. Thank you. All right.